NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANDRE' LEWIS,                    :
                                 :    Civil Action No. 07-1592 (GEB)
              Plaintiff,         :
                                 :
        v.                       :    **OPINION**
                                 :
P. WILLIAMS, et al.,             :
                                 :
              Defendants.        :

**APPEARANCES:**

RECEIVED

**MAY 0 2 2007**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

> ANDRE' LEWIS, Plaintiff pro se
> # 408198/#5
> Northern State Prison
> 168 Frontage Road, P.O. Box 2300
> Newark, New Jersey 07114-2300

**BROWN**, Chief Judge

Plaintiff Andre' Lewis ("Lewis"), currently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be allowed to proceed in part.[1]

## I.   BACKGROUND

Lewis brings this civil rights action against the following defendants: P. Williams, L. Viton, Reagan, and John Doe, all correctional officers ("CO") at the New Jersey State Prison ("NJSP"); Sgt. S. Alaimo, in charge of the Administrative Segregation Unit at NJSP at the time of the events at issue in the Complaint; R. Cathal, Administrator at NJSP at the time; J. Osvart, a hearing officer at NJSP; and P. Trent, assistant Administrator at NJSP.  The following factual allegations by plaintiff are taken from the Complaint and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

---

[1]  On April 20, 2007, this Court received a letter from plaintiff asking the Court to deem his Complaint "filed" as of the day he submitted it to prison officials for mailing, which was March 26, 2007.  The Clerk's Office received the Complaint on April 2, 2007.  Giving Lewis the benefit of all inferences related to the date he filed his complaint, the Court finds that Lewis did "file" his complaint on the date he handed them to prison officials to be mailed to the Court for filing, or on March 26, 2007.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134   F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas petitions submitted by inmates confined in an institution).

On March 29, 2005, defendants, CO Viton and CO Reagan, reported to the Administrative Segregation Unit ("Ad-Seg" Unit) at NJSP to escort Lewis to the NJSP clinic for plaintiff's daily morning insulin injection.  Lewis heard Unit Officer P. Williams telling CO Viton and CO Reagan that: "This the m**** f**** [sic]. Make sure you hold him. ... don't let him go."  Defendants Viton and Reagan conducted a strip search of plaintiff, securing plaintiff in metal handcuffs attached to a leather restraining device fastened tightly around his waist while plaintiff was separated from defendants Viton and Reagan by a locked security gate.  Defendants then grabbed plaintiff by his elbows and pulled him off the tier.  Plaintiff was forced to stand still in an area outside of the tier and security gate, contrary to routine procedure.  (Complaint, ¶¶ 11-15).

Defendants did not bring plaintiff to the clinic for his insulin shot, and physically restrained him outside the tier and security gate while verbally threatening and harassing plaintiff. Defendant Williams moved within inches of plaintiff during this verbal abuse, and without warning or provocation, punched plaintiff in the face with a closed fist.  Lewis attempted to protect himself by lifting up his leg to back Williams off of him.  Defendants then threw Lewis to the floor, punching and kicking plaintiff repeatedly in the head and face.  Defendants also threatened to kill Lewis.  Williams also told plaintiff that

3

Williams had planned the attack against him.  Lewis was restrained in handcuffs attached to a leather restraining device around his waist during this attack.  (Compl., ¶¶ 16-24).

A code 33 (fight) was sounded and several correctional officers responded to the scene.  Upon their arrival, the responding officers joined the other defendants in the beating. Lewis was placed in leg irons and was repeatedly punched, kicked and stomped by the officers.  The leg irons cut into plaintiff's legs so severely that it caused serious lacerations, bruising and cut off plaintiff's blood circulation.  Defendant John Doe then grabbed plaintiff from behind by his eyeballs and began gouging Lewis' eyes until they bulged from their sockets, cursing and threatening to rip plaintiff's eyes out and kill him.  (Compl., ¶¶ 25-28).

Plaintiff was taken to the NJSP clinic for treatment of the injuries he sustained in the beating.  While en route to the clinic, defendant Alaimo repeatedly struck plaintiff's head and neck with a closed fist.  This attack occurred in the North Compound 1E corridor, known as the "Dead Zone" because there are no surveillance cameras.  Lewis was completely restrained by handcuffs, shackles, and other officers while Alaimo beat, cursed, and threatened plaintiff.  (Compl., ¶¶ 29-31).

Lewis was transported by ambulance to St. Francis Medical Center for treatment of his injuries because the medical staff at

4

NJSP determined that plaintiff's injuries required treatment at an outside hospital.  (Compl., ¶¶ 32-33).

Later that same day, March 29, 2005, Lewis was returned to NJSP and placed in pre-hearing detention.  On March 30, 2005, three disciplinary charges were issued against Lewis, alleging that he had spit on defendant P. Williams, that he had assaulted P. Williams, and that plaintiff had engaged in conduct that disrupted the orderly operation of the institution.  Lewis pled not guilty to these charges, and requested an investigation of the incident by the Special Investigation Division ("SID").  Lewis provided descriptions and cell locations of potential witnesses because he did not know the names of these inmates. (Compl., ¶¶ 34-36).

On March 31, 2005, Lewis filed a formal administrative remedy with Administrator Cathel about the March 29, 2005 assault.  The grievance form was returned to plaintiff unanswered and unsigned.  (Compl., ¶ 37).

An initial hearing on the disciplinary charges was held before defendant hearing officer Osvart on April 4, 2005.  This hearing was beyond the 72-hour prescribed limit for a disciplinary hearing for an inmate in pre-hearing detention.  At the hearing, Lewis again requested that SID be sent to the Ad-Seg Unit to locate witnesses to the attack.  He also requested a

transcript of the video surveillance tape that recorded the assault.  (Compl., ¶¶ 38-39).

On April 18, 2005, a courtline hearing was held before hearing officer Osvart.  At that time, Lewis complained that his initial hearing was not conducted within 72 hours.  He also asked for the names of the witnesses and a transcript of the video surveillance tape.  Osvart stated that he did not have names of witnesses and stated that SID provided him the wrong surveillance tape.  However, Osvart refused Lewis' request to have the SID provide a copy of the correct tape.  Osvart then proceeded to dismiss the two most serious charges against plaintiff and found Lewis guilty of spitting on defendant P. Williams.  Lewis claims there was no evidence to support this frivolous charge.  In fact, Lewis alleges that Osvart told plaintiff that Osvart had to find plaintiff guilty of "'something', so as to satisfy the officers and hopefully minimize retaliatory acts by them."  Compl., ¶¶ 40-46).

Lewis was sanctioned as follows: 15 days detention, 365 days punitive administrative segregation, and 365 days loss of commutation time.  He filed an administrative appeal to defendant Cathel, who ignored the appeal and assigned the appeal to defendant Trent for review.  On April 25, 2005, Trent denied the administrative appeal.  (Compl., ¶¶ 46-49).  Lewis further alleges that from April 25, 2005 until he filed this Complaint,

6

he has repeated communicated with administrative officials in an effort to exhaust his administrative remedies.  He has not received any satisfactory response.

Lewis asserts claims of excessive force in violation of the Eighth Amendment and common law tort claims of assault and battery against defendants, P. Williams, L. Viton, Reagan, S. Alaimo, and John Doe.  He also asserts an Eighth Amendment failure to protect claim with respect to defendant Cathel for his failure to take disciplinary or other actions to curb the known pattern of physical and psychological abuse of inmates.  Next, Lewis alleges that defendant Osvart violated his right to due process with respect to the disciplinary proceedings by (1) refusing to request surveillance evidence that would have exonerated plaintiff, (2) delaying his initial hearing beyond the 72-hour time limitation for such hearing, (3) finding plaintiff guilty of spitting without evidence, and (4) providing an inadequate written disposition of the charges.  Finally, Lewis alleges that defendants Cathel and Trent violated his right to due process by refusing to reverse plaintiff's disciplinary conviction.  (Compl., ¶¶ 51-55).

Lewis seeks declaratory judgment against defendants that they violated plaintiff's constitutional rights.  He also seeks compensatory and punitive damages from defendants, Williams, Viton, Reagan, Alaimo, and John Doe, jointly and severally, in an

amount exceeding $350,000.00.  He further seeks injunctive relief, ordering that the disciplinary conviction be expunged from his record, and that his loss of commutation time be restored.  (Compl., "Relief Requested").

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103,

9

108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v.
Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his civil rights guaranteed under the
United States Constitution.   Section 1983 provides in relevant
part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.   <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

It would appear that all of the named defendants are state
actors because they are employed as correctional officials at the
New Jersey State Prison and with the Department of Corrections

10

("DOC").  Therefore, it appearing that all defendants may be persons acting under color of state law in this instance, the Court will review the claims asserted in the Complaint to determine whether plaintiff has sufficiently alleged a cognizable claim(s) upon which relief may be granted.  See 28 U.S.C. §§ 1915(e)(2) and 1915A.

## IV.  ANALYSIS

### A.  Excessive Force Claim

Plaintiff's claim against the named correctional officers, P. Williams, L. Viton, Reagan, S. Alaimo, and John Doe may be construed as an excessive force claim in violation of the Eighth Amendment because he is a convicted prisoner.  See Graham v. Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment).

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing

11

society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component is contextual and responsive to "'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345. What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation. Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Quoted in Hudson, 503 U.S. at 6.

12

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action").  Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

13

judge's chambers, violates a prisoner's constitutional rights." Id. at 9-10.

Here, Lewis alleges that defendants brutally assaulted him without provocation by kicking, punching, and stomping on him while plaintiff was restrained by handcuffs, shackles and other officers.  Further, Lewis asserts that he sustained serious injuries that required his transport to an outside hospital for medical treatment, thus suggesting that his injuries were not de minimis.[2]  Therefore, based on the allegations in the Complaint, if true, it would appear that Lewis has asserted facts sufficient to suggest that defendants exhibited malicious and sadistic conduct intended to cause plaintiff pain.  Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force.  Hudson, 503 U.S. at 10.  Accordingly, this Court will allow this claim to proceed past the screening stage.

Furthermore, to the extent that Lewis also is asserting a common law tort claim of assault and battery against these

---

[2]  "[T]he Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm.  Id. at 649; Brooks, 204 F.3d at 106.  Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were de minimis.  Id.

individual correctional officers, the Court finds that supplemental jurisdiction may be exercised under 28 U.S.C. § 1367(a) because such claim is plainly related to plaintiff's Eighth Amendment excessive force claim, over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

B.    Failure to Protect or Supervise Claim

Next, Lewis alleges that defendant Cathel, Administrator at NJSP at the time, failed to take disciplinary or other preventive actions to curb the "well-known pattern" of physical abuse by defendant officers, Williams, Viton, Reagan, Alaimo, and John Doe, in violation of the Eighth Amendment.

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their

15

actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Here, Lewis alleges generally that there was a "well-known pattern" of physical abuse by defendants Williams, Viton, Reagan, Alaimo, and John Doe, against other inmates. This allegation may

16

be sufficient, at this early screening stage, to withstand dismissal because it tends to show that defendant Cathel was informed or should have known that there was a substantial risk of harm to plaintiff or other inmates from these corrections officers.  See Nami, 82 F.3d at 67-68; Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F.Supp. 193, 199-200 (D.N.J. 1997). Accordingly, the Court will allow this failure to protect claim proceed against defendant Cathel at this time.

C.   Denial of Disciplinary Due Process Claim

Next, Lewis alleges that defendant Osvart denied plaintiff his right to procedural due process during prison disciplinary proceedings.  Namely, Lewis states that Osvart refused to obtain video surveillance evidence that would have exonerated plaintiff, that the initial hearing was delayed beyond the 72-hour time limitation, that the determination of guilt for spitting was not based on any evidence, and that there was an inadequate written disposition of the charges.  Lewis does not seek monetary damages from defendant Osvart with respect to this claim.  Rather, it appears that he seeks to have the disciplinary action expunged and his loss of commutation time restored.  Similarly, Lewis alleges a general due process violation against defendants Cathel and Trent for refusing to reverse the disciplinary conviction. Again, plaintiff asks that his commutation time be restored.

17

To support this denial of procedural due process claim, Lewis must demonstrate that the procedures afforded him fell short of the requirements enunciated in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).[3]  <u>Jackson v. Johnson</u>, 15 F. Supp.2d 341, 351 (S.D.N.Y. 1998).  See <u>Sandin</u>, 515 U.S. at 487.

In <u>Wolff v. McDonnell</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-71.  However, inmates do not have an absolute federal constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings.  <u>Id</u>. at 567-68.  See also <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321-22 (1976); <u>Young v. Kann</u>, 926 F.2d 1396, 1404 (3d Cir. 1991); <u>Sanchez v. Roth</u>, 891

---

[3]  In <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).

F. Supp. 452, 458-59 (N.D.Ill.1995); <u>Harrison v. Pyle</u>, 612 F. Supp. 850, 854-55 (D. Nev. 1985).

<u>Wolff</u> requires only that 24-hour notice of charges be given to an inmate before his disciplinary hearing. There is no requirement that the hearing be held within a certain time frame. Therefore, to the extent plaintiff claims that he was denied due process because his initial hearing was held five days after notice of charges (rather than within 72 hours after notice of charges as allegedly provided under state regulation), he fails to state a cognizable claim of constitutional dimension.

Similarly, Lewis fails to allege a claim of constitutional magnitude with respect to his allegations that there was insufficient evidence to support the disciplinary finding, and that the written disposition was inadequate accordingly.

Moreover, to the extent Lewis may be asserting that his confinement in administrative segregation and detention violated due process, such claim also is subject to dismissal. Procedural due process rights are triggered by a deprivation of a legally cognizable liberty interest.[4] For a prisoner like Lewis, such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484

---

[4] The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law."

19

(1995).  Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law."  Id.  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S. at 480.  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).  Here, Lewis' disciplinary detention for 15 days and disciplinary segregation for 365 days (one year), even if due to alleged false disciplinary actions, does not trigger the protections of the Due Process Clause.  See Sandin, 515 U.S. at 484-486.

The Third Circuit has observed, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that factor should be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997)(disciplinary segregation of state prisoner for 15 months did not impose atypical and significant hardship on prisoner, and thus, did not implicate the due process clause).  Here, the

Complaint fails to allege a claim of atypical or significant
hardship with respect to Lewis' periods of detention and
administrative segregation for disciplinary infractions.  Thus,
Lewis fails to state a deprivation claim of constitutional
magnitude, and this due process claim will be dismissed without
prejudice, as against all defendants accordingly, for failure to
state a cognizable claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).

D.  Expungement of Disciplinary Charge and Restoration of Credits

Finally, the Court observes that, with respect to
plaintiff's disciplinary due process claims, Lewis seeks only
injunctive relief, namely, the reversal of the disciplinary
finding and restoration of good conduct time.  This claim is
barred by Preiser v. Rodriquez, 411 U.S. 475 (1973), at this time
because such relief presumes plaintiff's immediate or speedier
release from prison.  Consequently, Lewis' request for reversal
of the disciplinary charge and restoration of good time credit is
not cognizable under § 1983, but instead, should be raised in a
habeas proceeding.

In a series of cases beginning with Preiser v. Rodriquez,
411 U.S. 475 (1973), the Supreme Court has analyzed the
intersection of 42 U.S.C. § 1983 and the federal habeas corpus
statute, 28 U.S.C. § 2254.  In Preiser, state prisoners who had
been deprived of good-conduct-time credits by the New York State

21

Department of Correctional Services as a result of disciplinary
proceedings brought a § 1983 action seeking injunctive relief to
compel restoration of the credits, which would have resulted in
their immediate release.  411 U.S. at 476.  The prisoners did not
seek compensatory damages for the loss of their credits.  411
U.S. at 494.  The Court held that "when a state prisoner is
challenging the very fact or duration of his physical
imprisonment, and the relief he seeks is a determination that he
is entitled to immediate release or a speedier release from that
imprisonment, his sole federal remedy is a writ of habeas
corpus."  Id. at 500.  Therefore, plaintiff's claim seeking
reversal or expungement of the disciplinary charge and the
restoration of good conduct time credits will be dismissed
without prejudice.

## V.   CONCLUSION

Therefore, for the reasons set forth above, plaintiff's
claims alleging excessive force and failure to protect, in
violation of the Eighth Amendment will be allowed to proceed at
this time against defendants, P. Williams, L. Viton, Reagan, S.
Alaimo, John Doe, and R. Cathel.  Further, because the common law
tort claim of assault and battery is related to the excessive
force claim, the Court will exercise supplemental jurisdiction
over this claim pursuant to 28 U.S.C. § 1367(a).  However,
plaintiff's claims against R. Cathel, P. Trent, and J. Osvart,

22

alleging denial of procedural due process and disciplinary due process in general, will be dismissed at this time for failure to state a claim.  To the extent plaintiff is seeking a reversal or expungement of the disciplinary finding and restoration of good time credits, such claim will be dismissed without prejudice, for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.

GARRETT E. BROWN, JR., Chief Judge
United States District Court

Dated: May 1, 2007

23