NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ANDRE LEWIS, Plaintiff,

v.

PAUL WILLIAMS, et al., Defendants.

Civ. No. 07-1592 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

This matter comes before the Court upon the Defendants Lazaro Viton ("Viton"), Paul Williams ("Williams"), Stephen Alaimo ("Alaimo") and Ronald Cathel's ("Cathel") (collectively, "Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the parties's submission and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Defendants' motion in part and grant it in part.

**BACKGROUND**

Andre Lewis ("Plaintiff" or "Lewis") is incarcerated at a New Jersey State Prison facility in Newark, New Jersey ("NJSP" or "the Prison"). (Def. Br. at 1; Pl. Opp'n at 1.) Defendants Williams, Viton and Regan were NJSP officers at the time of the events at issue. (Compl. ¶¶ 4, 6; Def. Br. at 1-3.) Defendant Alaimo was a sergeant at the NJSP at the time, and Defendant Cathel was the administrator of the NJSP. (Compl. ¶¶ 6-7; Def. Br. at 5.)

Plaintiff claims that on the morning of March 29, 2005 Defendants Viton and Regan

came to the Prison's Administrative Segregation Unit to escort the Plaintiff to the clinic, where he was to receive his daily insulin injection. (Compl. ¶ 11.) Plaintiff contends that Officers Viton and Regan strip-searched him, placed him in handcuffs, and escorted him out of the security gate where he was forced to stand still. (*Id*. at ¶¶ 13, 15.) Plaintiff submits that he was then approached by Officer Williams, who allegedly "began to verbally abuse, berate and threaten him without cause or provocation." (*Id*. at ¶ 16.) He claims that Officer Williams then punched him the face with a closed fist while Plaintiff was restrained by Officers Viton and Regan. (*Id*. at ¶ 20.)

Plaintiff submits that he tried to defend himself by using his free leg to push Officer Williams away, but that the officers threw him to the floor. (*Id*. at ¶¶ 21-22.) Plaintiff claims that he was punched and kicked in the head and face repeatedly while Williams threatened to kill Plaintiff, that Defendants Viton and Regan assisted Officer Williams in beating and verbally abusing him, and that they were joined in turn by other officers called on the scene when a Code 33 (fight) was sounded. (*Id*. at ¶¶ 23-25.) Plaintiff contends that he was then placed in leg irons "which were intentionally stomped into his legs so deeply that they caused serious lacerations, trauma, and cut off blood circulation." (*Id*. at ¶ 27.)

Plaintiff's complaint alleges that his injuries were such that he had to be escorted to the Prison's clinic by Defendant Alaimo and two other correctional officers, but that he was "struck repeatedly in his head and neck with a closed fist" by Alaimo as they entered the North Compound 1E corridor, an area know not to be covered by the Prison's video surveillance system. (*Id*. at ¶ 30.) According to Plaintiff, the medical staff at the Prison deemed that his injuries were severe enough to require treatment at an outside hospital. (*Id*. at ¶ 32.)

On April 2, 2007, Plaintiff filed a complaint (the "Complaint") under 42 U.S.C. § 1983 against Defendants Williams, Viton, Regan, Alaimo, Cathel, Trent, and John Osvart.[1] (Def. Br. at 1; Compl.) Plaintiff submits that Defendants violated his constitutional Eighth Amendment rights by using excessive force against him, and sets forth claims of common law assault and battery. (Def. Br. at 2; Compl. at 10.)[2]

**DISCUSSION**

A. Standards

1. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted . . . .

FED. R. CIV. P. 12(b).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct.

---

1 Defendants James Regan and John Osvart were dismissed from this matter by Order of the Court dated August 27, 2007. (Docket Entry No. 24.)

2 As a threshold matter, the Court notes Mr. Lewis' claim that neither he nor any representative of his have had the opportunity to view the Prison's videotape of the events at issue. (Pl. Opp'n at 1.) The Court is mindful that the New Jersey Department of Corrections may prohibit Mr. Lewis from maintaining a copy of the videotape in his possession. As a matter of fairness, however, the Court orders that he be given the opportunity to view it once, at the very least.

1955, 1964 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. *Id*. at 1965-66 (abrogating *Conley*'s standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. *Id*. at 1965.

The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." *Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied* 510 U.S. 1042 (U.S. Jan. 10, 1994) (No. 93-661).

2. Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

B. Application

1. Whether Defendants Are Entitled To Absolute Immunity Under the Eleventh Amendment.

Defendants submit that "[t]o the extent that Plaintiff's Complaint can be construed to assert claims seeking damages against the Defendants in their official capacities, those claims must be dismissed because they are barred by the Eleventh Amendment and because Defendants while acting in their official capacities are not 'persons' amenable to suit." (Def. Mot. at 14.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Amendment's "reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997), *citing Poindexter v. Greenhow*, 114 U.S. 270, 287 (1885). In essence, "[t]he Eleventh Amendment confirms the sovereign status of the States by shielding them from suits by individuals absent [the states'] consent." *Frew v. Hawkins*, 540 U.S. 431, 437 (2004), *citing Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

The Supreme Court has however established exceptions to the rule. In *Ex parte Young*, the Court declared that the Eleventh Amendment did not preclude a plaintiff from seeking *prospective injunctive relief* against *state officials* in their official capacities to enjoin the enforcement of state statutes claimed to be unconstitutional. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908) ("[I]ndividuals, who, as officers of the State . . . threaten . . . to enforce against parties affected an unconstitutional act . . . may be enjoined by a Federal court of equity from such action."); *see also Mangan v. Brierre*, No. 07-1817, 2007 U.S. App. LEXIS 28426, at *5 (3d Cir. Dec. 7, 2007) (state officials sued in their official capacity not "persons" within the meaning of 42 U.S.C. § 1983). This Court has noted that:

> [t]his exception to the Eleventh Amendment is a very narrow one, permitting plaintiffs to seek prospective relief, and only when a state official and not the State or a state agency is the named defendant. [It] has no application where the lawsuit, although naming a state official, is more correctly construed as a suit against the State, which is completely barred by the Eleventh Amendment, regardless of the relief sought.

*Doe v. Division of Youth and Family Services*, 148 F. Supp. 2d 462, 483 (D.N.J. 2001).

Moreover, a plaintiff may still bring suit against said officials in their *individual* capacity. Indeed, an officer may be held personally liable for actions taken while performing official functions. MOORE'S § 124.40[1][b] n.8, *Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals."). "In determining whether plaintiffs sued [defendant] in her personal capacity, official capacity, or both, we first look to the complaints and the 'course of proceedings.'" *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *citing Kentucky*

*v. Graham*, 473 U.S. 159, 167 n.14 (1985).

Defendants submit that Williams, Viton, Regan, Alaimo and Cathel were all State officials acting in their official capacities during the events at issue in the case at bar, and that they have not consented to suit in this District. (Def. Mot. at 15-16.) Defendants submit that "[a]s State officials, Defendants are not 'persons' for purposes of 42 U.S.C. § 1983 suit and, therefore, may not be sued under this statute." (*Id*. at 17.) The Third Circuit has however rejected "the suggestion that a state official can be sued in her personal capacity only if the allegedly unconstitutional actions were not taken in her official capacity. The Supreme Court cases expressly recognize that individual capacity suits may be brought against government officials who acted under color of state law." *Melo*, 912 F.2d at 637. Here, the Court must turn to the course of the proceedings to assess whether Defendants were sued in the individual capacities.

As a threshold matter, it appears beyond dispute that Defendant Cathel was not personally involved in the conduct complained of here, and that he is being sued in his official capacity only. Accordingly, the Court holds that he is entitled to absolute immunity under the Eleventh Amendment and must be dismissed from this action. The Court notes, however, that Plaintiff's Complaint is otherwise directed only at the officers who allegedly caused him injury, and that Mr. Lewis seeks monetary compensation from the individual themselves, not the state agency.[3]

---

[3] Indeed, the Complaint states as follows. "Award compensatory damages in the following amounts:

> 1. $250,000 jointly and severally against defendants P. Williams, L. Viton, Re[]gan, S. Alaimo, John Doe, and Cathel for the physical and emotional injuries sustained as a result of the plaintiff's beating.

Courts have often encouraged litigants to specify whether their suit is directed towards officials in their individual capacity. Mr. Lewis' Complaint fails to do so. Given his status as a *pro se* litigant, however, the Court will give Mr. Lewis some leeway in this matter. The Court holds that Plaintiff has set forth sufficient allegations to raise a non-speculative claim that Defendants are not entitled to absolute immunity from suit under the Eleventh Amendment.[4]

2. Whether Defendants are entitled to qualified immunity.

Defendants argue, in the alternative, that they are entitled to qualified immunity because "they acted reasonably when confronted with the hostile behavior of the plaintiff" and that they

---

(Compl. at 10-11.)

4 Mr. Lewis did seek injunctive relief against the New Jersey Department of Correction, which would tend to indicate a suit against Defendants in their official capacities. *See Miller v. Smith*, 220 F.3 d 491, 494 (7th Cir. 2000) ("Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity."). The New Jersey Department of Corrections is not, however, a party to this suit. The Court must therefore dismiss Mr. Lewis' request that the Court:

> Issue an injunction ordering the New Jersey Department of Corrections to:
>
> 1. Expunge the disciplinary convictions described in this complaint from the plaintiff's institutional record.
>
> 2. Restore 100% of the 365 days of lost commutation time taken from the plaintiff relative to the events described in this complaint.

(Compl. at 10.) This invalid claim for relief is not, in the Court's view, sufficient to suggest that Plaintiff's Complaint was aimed at the Defendants in their official capacity.

"cannot be held liable for excessive force or for failing to protect him." (Def. Mot. at 17-18.)

"Qualified immunity shields government officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329, 2008 U.S. App. LEXIS 3693, at *5 (3d Cir. Feb. 20, 2008), *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation." *Dancy*, at *5, *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). "This immunity is broad in scope and protects all but the plainly incompetent or those who knowingly violate the law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007), *quoting Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J. dissenting).

Defendants submit that there is no evidence to substantiate Plaintiff's claim that he was verbally and physically abused by Defendants Williams, Viton, Regan and other unknown responding officers. (Def. Mot. at 19.) Instead, Defendants claim that "the evidence shows that Plaintiff instigated the altercation with [the] officers by kicking Officer Williams and continuing to be combative and resisting the attempts of multiple officers to subdue him." (*Id.*) Defendants contend that the force used to subdue Plaintiff outside his cell was "no more force than was necessary to subdue Plaintiff." (*Id.* at 20.)

As for the alleged assault by Sergeant Alaimo, Defendants contend that the examination by the doctor at the Prison medical unit revealed no injuries of the sort he claimed to have sustained because of the leg irons, and that non-party witnesses to the escort procedure asserted that no abuse took place in the zone described as lacking video surveillance coverage. (*Id.*)

Defendants maintain that Williams, Viton, Regan and Alaimo did not use excessive force against Plaintiff in violation of his Eighth Amendment rights, and that the evidence shows that "[P]laintiff was properly restrained under the pending circumstances." (*Id*. at 21.)

Defendants insist that the videotape evidence blatantly contradicts Plaintiff's version of the facts, that there is no evidence of Officer Williams instigating the incident by punching Plaintiff in the face, and that the record shows that Plaintiff himself triggered the events at issue by kicking and assaulting Officer Williams. (*Id*. at 28.) Defendants conclude that their actions were merely the result of a "good faith effort to maintain and restore discipline." (*Id.*)

Having reviewed all the evidence in the light most favorable to the non-movant, including the videotape allegedly depicting the initial beating of Mr. Lewis outside his cell, the Court holds that there remains a genuine issue of material fact as to whether Defendants' actions were reasonable in light of Plaintiff's allegedly hostile behavior, and thus, as to whether Defendants are entitled to qualified immunity. Indeed, the parties' accounts of the incident's instigation differ widely, and the videotape, which might have been expected to resolve such an issue of fact, fails to do so. The Court notes that the video is of poor quality, with very grainy footage, and that it amounts essentially to a slide-show of still pictures, with one image taken approximately every two seconds. Significant portions of the events depicted are thus lost to these visual interstices.

Turning to Plaintiff's allegation that he was repeatedly punched by Officer Alaimo in a surveillance video "dead zone" on his way to the clinic, the Court also holds that there remain genuine issues of material fact as to whether this incident happened and whether the officers' actions were reasonable. The Court notes Defendants' claim that all parties to the escort of Mr.

Lewis from his cell to the clinic – other than Mr. Lewis himself – categorically deny that he was beaten on the way. All of these witnesses appear to be the Defendants themselves or their colleagues, however. For the foregoing reasons, the Court hold that there remain genuine issues of material fact as to whether Defendants are entitled to qualified immunity in this matter.

3. Whether Defendants Are Entitled to Summary Judgment on Plaintiff's Assault and Battery Claim

Defendants submit that Plaintiff's common law assault and battery claim must be dismissed because there is allegedly no evidence to support such a claim. (Def. Mot. at 29.) New Jersey courts have held that "proof of an unauthorized invasion of the plaintiff's person, even if harmless, entitles him to nominal damages based upon the theory of assault and battery. " *Samoilov v. Raz*, 222 N.J. Super. 108 (N.J. Super. Ct. App. Div. 1987), *quoting Perna v. Pirozzi*, 92 N.J. 446, 460 (1983). As the Court explained above, however, there remain genuine issues of material fact as to whether Mr. Lewis was subjected to an "unauthorized invasion of his person," either in front of his cell, or on his way to the clinic. The Court will therefore deny Defendants' motion for summary judgment on the issue.

4. Whether Plaintiff's New Jersey Tort Claims Act Claim is Barred.

Defendants argue that "Plaintiff's claim under the New Jersey Tort Claims Act for pain and suffering is barred because his injuries do not meet the medical threshold for recovery." (Def. Mot. at 29.) The New Jersey state legislature adopted the Tort Claims Act in 1972. *Gilhooley v. County of Union*, 164 N.J. 533, 538 (2000). "The overall purpose of the Act was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine." *Id.*, *citing* N.J.S.A. § 59:1-2. "Even where liability is present, the Act sets forth limitations on recovery. One is the limitation on the recovery of pain and suffering damages . . .

." *Gilhooley*, 164 N.J. at 538.  Indeed, N.J.S.A. § 59:9-2(d) provides, in part, that:

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 3,600.00.

N.J.S.A. § 59:9-2(d).  However, N.J.S.A. § 59:3-14 adds that:

> a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.
> b. Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

N.J.S.A. § 59:3-14.

Defendants argue that Plaintiff's claim must fail because "he does not even allege that he sustained a permanent injury."  (Def. Mot. at 31.)  Indeed, Defendants claim that "Plaintiff's injuries neither equate to a permanent injury nor permanent loss of a bodily function that is substantial."  (*Id.*)  The Court finds Defendants' arguments unavailing.  There remain genuine issues of material fact, as outline above, as to whether Defendants' conduct could be deemed to have occurred outside of their scope of work, or willfully.  Under the circumstances, there remains a genuine issue of material fact as to whether the N.J.S.A. § 59:9-2(d) bar applies.  The Court will therefore deny Defendants' motion for summary judgment on the issue.

     5.      Whether Plaintiff's Claim for Punitive Damages Must be Dismissed.

Defendants contend that "Plaintiff's federal and state claims for punitive damages must be dismissed because he cannot make the requisite showing to warrant such relief."  (Def. Mot. at

32.) In particular, Defendants submit that the record in the case at bar "is devoid of any facts or evidence to support Plaintiff's allegation that the Defendants assaulted him." (*Id.*) Moreover, Defendants claim that "Plaintiff's state claim for punitive damages must also be dismissed because it is barred by the Tort Claims Act." (Def. Mot. at 33.)

The Court disagrees with Defendants' claim that N.J.S.A. 59:9-2(c) bars claims for punitive damages against them in the case at bar. That statute provides that "[n]o punitive or exemplary damages shall be awarded against a public entity." N.J.S.A. § 59:9-2(c). However, "while the TCA expressly bars recovery of punitive damages against public entities, . . . the New Jersey courts have held that no such immunity exists under the TCA for public employees." *Mantz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002), *quoting Wildoner v. Borough of Ramsey*, 316 N.J. Super. 487, 508 (N.J. App. Div. 1998.); *see also Roberts v. Gillikin*, No. 06-88, 2008 U.S. Dist. LEXIS 5475, at *8 (D.N.J. Jan. 25, 2008) (while the New Jersey Torts Claim Act barred punitive damages against the municipality, a defendant in that case, it did not preclude such damages against a police officer defendant).

The Court also disagrees that Defendants are entitled to summary judgment that Mr. Lewis was not assaulted by any of the Defendants. As explained above, there remain genuine issues of material fact as to the degree of force used against Plaintiff and as to whether Mr. Lewis himself might have triggered the events at issue.

6. Whether Defendants Are Entitled to Summary Judgment On The Grounds That Plaintiff's Injuries Were Allegedly De Minimis And Therefore Non-Actionable

Defendants contend that "Plaintiff cannot produce any credible evidence to show [that] he suffered more [than] de minimis injuries." (Def. Mot. at 36.) Defendants conclude that his

injuries were not "objectively harmful enough" to offend "contemporary standards of decency," and that they are therefore non-actionable. (*Id.*)

"When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), *citing Whitley v. Albers*, 475 U.S. 312, 327 (1986). "This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9. "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action . . . The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort ' repugnant to the conscience of mankind." *Id.* at 9-10; *see also Wilson v. Brown*, No. 07-2328, 2008 U.S. App. LEXIS 899, at *5 (3d Cir. Jan. 16, 2008).

Reviewing all the evidence in the light most favorable to non-movant, there remain genuine issues of material fact as to the amount of force used on Plaintiff and the extent of the injuries he suffered. As explained above, the video footage of the incident does not conclusively answer the questions before the Court, and the parties' accounts of the incidents differ greatly. Under the circumstances, the Court will deny Defendants' motion for summary judgment on the issue.

**CONCLUSION**

      For the foregoing reasons, the Court will deny in part and grant in part Defendants' motion.

 An appropriate form of Order accompanies this Opinion.

Dated: April 21, 2008

                                                      s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.